# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 27, 2004

## STATE OF TENNESSEE v. DAVID CLINTON YORK

**Direct Appeal from the Criminal Court for Clay County**
**No. 4028     Lillie Ann Sells, Judge**

---

**No. M2003-00525-CCA-R3-CD - Filed May 3, 2004**

---

The defendant, David Clinton York, an inmate in the Clay County Jail, pled guilty to felony escape and was sentenced as a Range III, persistent offender to five years in the Department of Correction. On appeal, he argues that the trial court erred in determining that he was a persistent offender, in denying alternative sentencing, and in applying the enhancement and mitigating factors. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Michael R. Giaimo, Livingston, Tennessee, for the appellant, David Clinton York.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William Edward Gibson, District Attorney General; and John A. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

At the defendant's initial sentencing hearing held on September 3, 2002, the State related what its proof would have been had the case gone to trial:

> [O]n the date of the offense, August 31, 2001, [the defendant] was being incarcerated, had not made bond for a charge of aggravated assault, two charges of aggravated assault. . . . Which had occurred several days prior to August 31st, 2001. While being an inmate at the Clay County Jail, while [the defendant] was an inmate, the jail's cook, Mr. Emerson Wilson, began serving lunch one day around

noontime. In order to do that, he takes for the prisoners who are under lockdown, takes a tray or cart back through the holding cell to deliver the different, to different persons.

While he was back there, [the defendant] was able to be out of his cell, he walked down the way there, out through this single door to get outside of the holding area, through a door there at the side of the jail and out.

An investigation revealed that he was gone and they began looking for him immediately and he was located about a week later by Deputy Bean and another deputy . . . in a location out in the county, in Clay County. Sheriff Rhoten would testify that he had not given him permission, Sheriff Rhoten of Clay County, he had not given him permission to leave. That's basically what the state proof would show.

Michael Newport of the Tennessee Board of Probation and Parole testified that he prepared the defendant's presentence report from information he received from the Clay County Sheriff's Department, the District Attorney General's case file, and the Clay County Circuit Court Clerk's Office. He also interviewed Deputy Bean of the Clay County Sheriff's Department. As to the defendant's prior convictions, Newport said that the defendant had three convictions for receiving stolen property over $100 committed on January 1, 1987, in Monroe County, Kentucky, Circuit Court Case Nos. 87CR005, 87CR006, and 87CR007. The defendant also had a fourth conviction, in Monroe County, Kentucky, Circuit Court Case No. 87CR008, for receiving stolen property over $100, with that offense occurring on January 17, 1987. Copies of the four indictments, as well as a certified copy of the judgment entered on May 27, 1987, for these offenses were admitted into evidence. Newport said that the defendant also had convictions in the United States District Court, Western District of Kentucky, for three counts of unlawful transportation of stolen firearms and two counts of sale and disposal of stolen firearms. According to copies of the federal indictments, which were admitted into evidence along with a certified copy of the judgment for these offenses, the offense dates for the three counts of unlawful transportation of stolen firearms were December 1986, December 24, 1986, and January 17, 1987, while the offense dates for the two counts of sale and disposal of stolen firearms were December 1986 and December 24, 1986.

Newport testified his investigation further revealed that the defendant had been convicted in Polk County, Arkansas, Circuit Court Case No. CR-74-59 of grand larceny, with the offense occurring on November 10, 1974.[1] Newport said that, according to federal probation office records, the defendant had used an alias, Randy Combee, in the past. Newport also identified certified copies of judgments from the Polk County, Arkansas, Circuit Court in Case Nos. CR-74-61 and CR-74-62

---

[1]We note that Newport said "November 10th, 1984," when testifying; however, according to the indictment which was admitted into evidence, the offense date was November 10, 1974.

wherein the defendant had pled guilty to burglary and grand larceny in each case, with the offenses occurring on November 20, 1974, and November 15, 1974, respectively. According to the certified copies of the judgments and the indictments for Polk County, Arkansas, Circuit Court Case Nos. CR-74-63 and CR-74-64, which were admitted into evidence as well, the defendant was convicted of burglary and grand larceny in each case, with all of the offenses occurring on November 15, 1974. Additionally, Newport identified a certified judgment and indictment from the Polk County, Arkansas, Circuit Court in Case No. CR-75-11, wherein the defendant had pled guilty to escape from jail, with the offense occurring on December 20, 1974. With the exception of the judgment in Case No. CR-74-62, which listed the defendant as "David Clinton York, alias Randy Combee," all of the Polk County, Arkansas, Circuit Court judgments listed the defendant as "Randy Combee."

Newport also identified a certified judgment and indictment from Polk County, Florida, Circuit Court Case No. CF74-1331 showing that the defendant had been convicted of rape, with that offense occurring in June 1974. Newport said that his investigation revealed that the defendant was on federal parole at the time he committed the instant offense and that he was acquitted of the charges for which he was being held at the time he escaped. Newport acknowledged that the drug test he administered to the defendant was "clean" and that most of the defendant's prior convictions occurred over twenty-five years ago.

Burton Putman, the defendant's federal probation officer, testified that the defendant had been convicted of three counts of unlawful transportation of stolen firearms and two counts of sale and disposal of stolen firearms into interstate commerce on August 18, 1987, and had received a total sentence of twenty years. The defendant was in federal custody from August 1987 until May 19, 2000, when he was paroled. During his supervision of the defendant's parole, Putman discovered that the defendant had used an alias, Randy Combee. Putman identified a Kentucky federal court indictment that listed the defendant as "David Clinton York, a/k/a Randy Combee." Putman also believed that the Randy Combee named in the Arkansas judgments was the same person as the defendant. Putman said that the defendant was on federal parole on August 31, 2001, when he committed the instant offense.

On cross-examination, Putman acknowledged that only one of the Arkansas judgments listed the defendant as "David Clinton York, alias Randy Combee" while the others listed him as "Randy Combee." He said he never asked the defendant if he had used that particular alias "because that was done way before [his] involvement with [the defendant]." The defendant was frequently tested for drugs while under Putman's parole supervision, and no illegal substances were ever detected. Putman said that a parole violation warrant was issued "following a DUI [the defendant] received in the State of Kentucky in June of 2001. And then it was amended to include those charges that he was eventually acquitted of in Clay County and now has been amended again to include the felony escape." Asked by the court if he had reviewed the defendant's prior criminal history with him, Putman replied, "No . . . [t]hat would have been done by an officer in my capacity in Bowling Green, Kentucky who wrote the pre-sentence report in 1987." In response to the court's inquiry as to whether the defendant's convictions under the name of Randy Combee had been used in federal court to enhance his sentence, Putman said, "As far as the enhancement . . . I'm not sure at that time.

-3-

That would have been pre-guideline, federal guideline. About that time is when the guidelines came into being. So he was an old case, an[] old guidelines case." Putman said that a presentence report, which would have included the defendant's entire criminal history, had been prepared, but he did not bring a copy with him to court. Putman then identified a federal presentence report handed to him by the prosecutor and acknowledged that the defendant's Polk County, Arkansas, convictions were included in the report. Putman said that, because the Arkansas judgments were a part of the federal presentence report, it was likely that the court considered those convictions when sentencing the defendant.

Because the State sought to have the defendant classified as a career offender, the trial court continued the sentencing hearing to a later date to allow the State time to gather additional proof as to whether the defendant and Randy Combee were the same person. At the continuation of the hearing held on November 25, 2002, the State informed the court that it had been unable to obtain additional information regarding the defendant's Arkansas convictions under the name of Randy Combee due to the age of those convictions. The State then elected to proceed to have the defendant classified as a Range III offender, rather than a career offender. At the conclusion of the hearing, the trial court sentenced the defendant as a Range III offender to five years in the Department of Correction. Subsequently, on December 4, 2002, the trial court entered written findings of fact regarding the defendant's sentence.

## ANALYSIS

### Standard of Review

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation

or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

## I. Persistent Offender Classification

The defendant argues that the trial court erred in classifying him as a persistent offender, saying he did not have the requisite number of prior felony convictions because the State failed to prove that he "was in fact the individual known as Randy Combee." He contends he only had three prior felony convictions and, accordingly, should have been classified as a Range II offender.

Tennessee Code Annotated section 40-35-107(a)(1) defines a "persistent offender" as a defendant who has received "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes, where applicable." A multiple offender is defined as a defendant who has received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable." Tenn. Code Ann. § 40-35-106(a)(1).

We respectfully disagree that, even as "David York," the defendant has only three prior felony convictions. By our count, even excluding those convictions solely in the name of Randy Combee, the defendant has five prior felony convictions, thus justifying the court's sentencing him as it did. As we have set out, he was convicted in state and federal courts[2] as "David York" and "David Clinton York, a/k/a Randy Combee,"[3] respectively, in Kentucky for felony stolen property offenses occurring on January 17, 1987, and in the same Kentucky state court (as "David York") for felony stolen property offenses occurring on January 1, 1987. He was convicted in the Kentucky federal court, according to the judgment, as "David Clinton York" for felony firearms offenses occurring in December 1986 and January 1987. As "David Clinton York," he was convicted in Polk County, Florida, for a rape committed in June 1974; and he was convicted as "David Clinton York, alias Randy Combee" in Polk County, Arkansas, for burglary and grand larceny, which had been committed on November 15, 1974. We note that this Arkansas sentence was to be served concurrently with the series of sentences imposed on "Randy Combee."

As this court explained in State v. Cottrell, 868 S.W.2d 673, 678 (Tenn. Crim. App. 1992),

---

[2] Counts 1, 4, and 7 of the federal indictment, which were dismissed following the defendant's pleas of guilty to Counts 2, 3, 5, 6, and 8, recited his previous convictions as being the state convictions in Arkansas and Florida, some of which, as we have stated, were solely in the name "Randy Combee."

[3] The federal indictment listed the defendant as "David Clinton York, a/k/a Randy Combee," while the judgment listed him as "David Clinton York."

name similarity "constitutes prima facie evidence of identity," the court noting that the name "Scottie Cottrell" appeared both in the indictment which was the basis for the appeal, as well as the previous judgment that was the basis for enhanced punishment. Likewise, in State v. Woodson, 705 S.W.2d 677, 679 (Tenn. Crim. App. 1985), this court explained, quoting Beeler v. State, 206 Tenn. 160, 166, 332 S.W.2d 203, 206 (1959), that "'[a] majority of the authorities hold that the identity of name of the defendant and the person previously convicted is prima facie evidence of the identity of the person, and in the absence of rebutting evidence, supports a finding of such identity.'"

These authorities make it clear that the State sufficiently proved that this defendant, "David Clinton York," had at least five prior felony convictions of sufficient grade to justify his being sentenced as a Range III, persistent offender. Even if his argument were correct that the State did not sufficiently prove that David York and Randy Combee are the same person, the fact remains that, as David York, the defendant's record of convictions qualified him as a persistent offender. Accordingly, this assignment is without merit.

## II. Denial of Alternative Sentencing

The defendant argues that, had he not been classified as a persistent offender, he would have been eligible for an alternative sentence because his sentence was eight years or less. At the sentencing hearing, the defendant's request for alternative sentencing was that "he's been incarcerated without any kind of break for fifteen months straight since he was picked up on the indictment, at that time for aggravated assault, later indicted for attempted first degree murder."

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). Tennessee Code Annotated section 40-35-303(a) states that a defendant shall be eligible for probation, subject to certain exceptions, if the sentence imposed upon the defendant is eight years or less. Even if eligible, however, the defendant is not automatically entitled to probation as a matter of law. See id. § 40-35-303(b). The burden is upon the defendant to show that he is a suitable candidate for probation. Id.; State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997); State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). In order to meet this burden, the defendant "must demonstrate that probation will 'subserve the ends of justice and the best interest of both the public and the defendant.'" State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995) (quoting State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)).

The presumption in favor of alternative sentencing may be overcome by facts contained in the presentence report, evidence presented by the State, the testimony of the accused or a defense witness, or any other source, provided it is made part of the record. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). A trial court may deny alternative sentencing and sentence a defendant to confinement based on any one of the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1).

In denying alternative sentencing, the trial court stated:

An alternative sentence, I can't find that . . . . By a preponderance of the evidence, the court finds that this defendant possesses a criminal history which evidences his clear disregard for the law and society and a failure of past efforts to rehabilitate the defendant. And that would have been the presumption of alternative sentencing. I can't make that with his criminal history. It's too extensive, too lengthy to do that.

Although the defendant was sentenced as a Range III offender, and thus not entitled to a presumption of being a favorable candidate for alternative sentencing, he would not have been entitled to this presumption even if he had been sentenced as a Range II offender, as he argues should have occurred. The presentence report shows that the defendant has spent the large bulk of his life, since 1965 when he was adjudged delinquent and sentenced to confinement in a Kentucky juvenile facility, in various federal and state penal institutions. The trial court determined that he was not entitled to alternative sentencing, and we agree.

### III. Application of Enhancement and Mitigating Factors

Lastly, the defendant argues that the trial court erred in its application of the enhancement and mitigating factors, making his five-year sentence excessive. Specifically, he argues that "[w]ithout the significant weight of the prior criminal history, the enhancement and mitigating factors could have canceled each other out and the court would have been left with the minimum sentence in the Range which should have been four (4) years."

The defendant was convicted of felony jail escape, a Class E felony. The sentencing range for a Class E felony in Range III is not less than four nor more than six years. Tenn. Code Ann. § 40-35-112(c)(5). The sentence to be imposed for a Class B, C, D, or E felony is presumptively the minimum in the range unless there are enhancement factors present. Id. § 40-35-210(c). Procedurally, the trial court is to increase the sentence within the range based on the existence of

enhancement factors, and then reduce the sentence as appropriate for any mitigating factors.  Id. § 40-35-210(e).  Here, the trial court applied enhancement factor (2), "[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," Tenn. Code Ann. § 40-35-114(2) (2003), and assigned it "a great deal of weight." The court applied one mitigating factor, "[t]he defendant's criminal conduct neither caused nor threatened serious bodily injury," Tenn. Code Ann. § 40-35-113(1) (2003), and assigned it "some weight."  The weight given to each factor is left to the sound discretion of the trial court.  State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

In setting the defendant's sentence at five years, the trial court stated:

> The court has considered all the evidence in this case that I've heard, the sentencing report.  I've considered the sentencing and the arguments that the counsel have made in this case.  I've considered the major characteristics of the criminal conduct and all the mitigating and enhancement factors.  I've considered my major findings as I have stated above, I have considered them all.
>
> The potential or the lack of potential for rehabilitation treatment, the court finds really none based on his criminal history. If you haven't learned enough by the time you're fifty something years of age, you're rehabilitative history is very important.  There's not a lot, as we said, before him there.  He was in custody and was found not guilty by a jury.  I don't know the facts of that case or anything about it, but he decided to leave the jail while he was being held for a felony.  With this criminal history, we're going to go with five years range three[.]

We conclude that the trial court did not abuse its discretion in giving great weight to the defendant's very substantial record of convictions over nearly a forty-year period.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE